IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NAUTILUS INSURANCE COMPANY**,

    Plaintiff,

v.                                                                           No. 2:11-CV-00178 BRB/LAM

**OTERO COUNTY HOSPITAL ASSOCIATION
d/b/a GERALD CHAMPION REGIONAL
MEDICAL CENTER, CHRISTIAN R.
SCHLICHT, D.O., QUORUM HEALTH
RESOURCES, LLC, CHS/COMMUNITY
HEALTH SYSTEMS, INC. and COMMUNITY
HEALTH SYSTEMS PROFESSIONAL
SERVICE CORPORATION,**

    Defendants.

**MEMORANDUM OPINION**

**This Matter** comes before the Court on Quorum Health Resources, LLC's Motion to Stay Proceedings, (docs. 8, 9), in which Otero County Hospital Association d/b/a Gerald Champion Regional Medical Center ("GCRMC") joined, (doc. 13). The primary issues are: (i) whether the analysis in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), governs the determination to grant a stay in this instance, and (ii) whether under the appropriate analysis, a stay should be issued. Having considered the arguments of the parties, the Court concludes that *Colorado River* controls this matter. Because the instant rescission action is not "parallel" to the underlying state tort actions, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 13 (1983), the Court denies Quorum's motion to stay the proceedings.

**Factual and Procedural Background**

Since April 2010, Quorum and GCRMC have been named as defendants in over fifty lawsuits in Otero County District Court, filed by patients who underwent spinal surgeries performed by Dr. Christian R. Schlicht at GCRMC from 2007 through 2010 (the "underlying state tort actions"). The plaintiffs in these cases allege that all defendants, including Dr. Schlicht, GCRMC, and Quorum,[1] engaged in both negligent and fraudulent behavior in providing services. *See, e.g.*, Doc. 19, Ex. 2, ¶ 80; Doc. 10, Ex. B, ¶ 35.[2]  For example, in case number CV-2010-149 filed on October 5, 2010 in the Twelfth Judicial District Court, the plaintiffs, Mela and Jake Herrera ("the Herreras"), allege that Dr. Schlicht was negligent and departed below the standard of care for at least eighteen reasons. Doc. 19, Ex. 2, ¶¶83(a-r). Included in this list are allegations that Dr. Schlicht negligently subjected plaintiffs to an unproven and unsafe procedure called "percutaneous disc arthroplasty,"[3] misrepresented his training and education, improperly created the perception that he was properly trained to perform any of the back surgeries he performed on the patient, and failed to perform a proper investigation and work-up of the patient's neurologic complaints. *Id.* The Herreras also allege that defendants GCRMC and Quorum breached their duty to exercise ordinary care for at least forty reasons. *Id.* at ¶84 (a-nn). Included in this list are allegations that the defendants negligently credentialed Dr. Schlicht, failed to delineate whether Schlicht's "minimally invasive spine surgery" credentials included

---

[1] Triad Healthcare Corporation, Triad Hospitals, Inc., Community Health Systems Professional Services Corporation; White Sands Health Care Systems, LLC and Frank Bryand, M.D., have also been named as defendants in various suits. *See, e.g.*, Doc. 19, Ex. 2, Doc. 10, Ex. B.

[2] Nautilus and Quorum each submitted a representative complaint from one of the approximately 50 underlying state tort actions. *See* Doc. 19, Ex. 2; Doc. 10, Ex. B. Both parties claim that the allegations in all 50 cases are substantially similar.

[3] Allegedly, "percotaneous disc arthroplasty" is considered an unproven or untested procedure involving the injection of liquid PMMA (e.g., plexiglass) into damaged areas of a patients' invertebral disc or discs for the purpose of fusing those areas. Doc. 19, Ex. 2, ¶¶ 34-42.

percotaneous disc arthroplasty, failed to investigate Dr. Schlicht's claimed academic credentials, and fraudulently concealed the experimental nature of Dr. Schlicht's surgery.  *Id.* at ¶84.

Pursuant to two Insurance Policies issued by Nautilus to Defendant GCRMC,[4] Nautilus is providing a defense in the underlying state tort actions.  Doc. 19, Ex. A, ¶ 3.  Nautilus filed an action in this Court on February 23, 2011, seeking rescission of the two Insurance Policies.  Doc. 1, at 7-8.

In its claim for rescission, Nautilus alleges that GCRMC made a material misstatement in its application for the Insurance Policies.  In order to purchase both Insurance Policies, GCRMC completed an application for insurance ("Application") which included the following question: "Are any of the following performed at the hospital? Experimental surgery?" Doc. 1, Ex. E. GCRMC's Chief Financial Officer, Morgan Hay, answered "No" to the question.  *Id.* ¶¶ 11-12. Robert J. Heckert, listed as GCRMC's Chief Executive Officer, represented that this response was true and accurate.  *Id*. at ¶16.  Similarly, James E. Richardson, also listed as GCRMC's CEO, confirmed that no experimental surgeries were being performed at the hospital.  *Id.* at ¶ 21.  The Application did not otherwise define the term "experimental surgery."

Nautilus alleges that these statements constituted material misrepresentations in light of the surgeries being performed at the hospital.  Specifically, Nautilus alleges that Dr. Christian R. Schlicht was performing experimental surgeries on patients, including percotaneous disc arthroplasty.  *Id.* at ¶ 8.  Nautilus alleges that if it had known about the experimental procedures being performed by Dr. Schlicht, it would have altered its underwriting and either not issued the Insurance Policies or charged a higher premium.  Doc 1, at ¶¶ 28-29.  Nautilus thus alleges that

---

[4] Nautilus issued a Healthcare Professional Liability Insurance Policy to GCRMC with liability limits of $1 million for each medical incident and $3 million in the aggregate.  Doc. 1, Ex. A.  Nautilus also issued an Excess Healthcare Professional Liability Policy to GCRMC with a limit of $5 million per claim, and $5 million in the aggregate.  Doc. 1, Ex. B.  Both policies were sold to GCRMC with a retroactive date of April 9, 1992.  Doc. 1, ¶ 14.  These policies will be referred to collectively as the Insurance Policies.

GCRMC's material misrepresentation on the Application renders the Insurance Policies void *ab initio*. *Id.* at ¶ 20. Nautilus requests relief from this Court including (A) rescission of both Insurance Policies, (B) a judgment that the misrepresentation on the Application renders the Insurance Policies unenforceable and precludes coverage for all claims brought under the Insurance Policies, and (C) any other relief the Court deems just and equitable, including the award of attorneys' fees and costs and interest. *Id.* at ¶ 33.

On April 14, 2011, Quorum moved to stay the proceedings in Nautilus' rescission action. Doc. 10. Quorum argues that there is obvious factual overlap between the cases, namely the issue of whether Dr. Schlicht performed experimental surgeries on patients. Quorum thus urges this Court to stay the proceedings until the first underlying state tort action reaches a judgment regarding this factual issue.

GCRMC joined in the motion to stay (doc. 13), and filed a Supporting Memorandum. Doc. 22). It argues that a stay is appropriate to preserve judicial resources and prevent friction between the state and federal courts. Nonetheless, it concedes that the experimental surgery issue is not the same issue in the state and federal proceedings.

Nautilus responded in opposition to the motion to stay proceedings and argues that this Court must exercise jurisdiction over its rescission claim. Doc. 19.

**Law Regarding Abstention**

The U.S. Supreme Court has made it clear that district courts have a "virtually unflagging obligation" to exercise jurisdiction, and may only decline to exercise or postpone this jurisdiction "in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813; *Moses H. Cone*, 460 U.S. at 15. In determining whether such "exceptional circumstances" are present, courts have considered a number of factors, including: (i) whether the questions before the court present difficult questions of state law, are governed by state-as opposed to federal-law, or bear

4

on policy problems of substantial importance to the state; (ii) whether principles of wise judicial administration and economy suggest deferring to the state courts; (iii) which court first assumed jurisdiction over any property at issue; (iv) whether the federal forum is less convenient; (v) whether allowing the matter to go forward in state court would avoid piecemeal litigation; and (vi) in which order jurisdiction was obtained by the concurrent forums. *See Colorado River*, 424 U.S. at 814-19; *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Ultimately, "the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of [federal] jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26.

     In the case of a declaratory judgment action, however, courts have greater discretion to defer to a parallel state court proceeding. The Federal Declaratory Judgment Act ("Act") provides that "in a case or actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Act thus "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). As a result, the U.S. Supreme Court held in *Brillhart* that, "[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction." 316 U.S. at 494; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."). In exercising such discretion, district courts should engage in an analysis based upon the factors enunciated in *Brillhart*, *Wilton*, and *State Farm Mutual Automobile Insurance Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994). As the Tenth Circuit explained in *St. Paul Fire and Marine Insurance Co. v. Runyon*,

5

a court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." 53 F.3d 1167, 1169 (10th Cir. 1995). The discretionary standard articulated in *Brillhart* is a definite limit on the district court's "virtually unflagging obligation" to exercise jurisdiction under *Colorado River*.

**Analysis**

> **I. *Colorado River* governs the Court's evaluation of Quorum's motion to stay the proceedings.**

The first issue is whether *Colorado River* or *Brillhart* governs the Court's evaluation of Quorum's motion to stay Nautilus' rescission action.[5] The Tenth Circuit's decision in *United States v. City of Las Cruces* provides guidance on this point. 289 F.3d 1170 (10th Cir. 2002). There, the United States filed an action in federal court seeking quiet title to certain water rights in the Rio Grande River, but only requested declaratory relief. *Id.* at 1180. The district court applied the *Colorado River* doctrine and refused to exercise jurisdiction over the United States' claim due to the existence a pending stream adjudication in New Mexico state court. *Id.* at 1179. In the alternative, the district court explained that it had discretion under *Brillhart* to decline jurisdiction. *Id.*

---

[5]GCRMC argues that Quorum's motion does not ask this Court to abstain from hearing Nautilus' case, but rather is focused on merely staying the case until the underlying state tort actions are resolved. GCRMC thus argues that this Court should apply the discretionary factors outlined in *Landis v. North America Co.*, 299 U.S. 248, 255 (1936), in determining whether to stay the proceedings. *See* Doc. 22, p. 2. *Landis*, however, arose in the context of two parallel federal suits: one in the U.S. District Court for the District of Columbia and one in the U.S. District Court for the Southern District of New York. *Landis*, 299 U.S. at 249-50. The case thus stands for a federal court's inherent authority (and discretion) to issue a stay in favor of another federal proceeding. *Landis* is inapplicable to the instant case involving the stay of a federal proceeding pending the conclusion of parallel state actions. Our analysis thus focuses on whether to apply the factors articulated in *Colorado River* or the factors articulated in *Brillhart* in determining whether a stay of Nautilus' rescission action is appropriate.

On appeal, the Tenth Circuit was presented with the question of whether *Brillhart* or *Colorado River* governed the district court's decision to decline jurisdiction. The Tenth Circuit explained that "the nature of the relief requested by the plaintiff, not the jurisdictional basis of the suit, is the touchstone" in answering this question. *Id.* at 1181. The Tenth Circuit thus held, "If the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit." *Id.* at 1181. Similarly, in *Sinclair Oil Corporation v. Amoco Production Co.*, the Tenth Circuit drew a distinction between suits seeking declaratory relief and those seeking coercive relief: "The Federal Declaratory Judgments Act authorizes, but does not compel, federal jurisdiction over suits seeking declaratory relief. Thus, unlike coercive actions, declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction." 982 F.2d 437, 440 (10th Cir. 1992). In the instant action, then, the Court must determine whether Nautilus' rescission action seeks coercive relief or merely a declaration of its rights.

Nautilus' action seeks coercive relief requesting a rescission of both Insurance Policies in their entirety. Such relief, if granted, would require the Court to cancel the Insurance Policies and effectively enjoin GCRMC and Quorum from enforcing the Insurance Policies in any pending or future litigation. *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir.1987) (stating "[a] declaratory judgment states the existing legal rights in controversy, but does not, in itself, coerce any party or enjoin any future action."). The prospective nature of the relief removes Nautilus' rescission action from the ambit of a merely declaratory action. *First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 163 (9th Cir. 1997); *Black Sea Inv. Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000).

Nautilus' rescission claim is further distinguishable from a declaratory judgment action due to the alleged material misrepresentations on the part of GCRMC.  Courts have distinguished an action for rescission based on alleged misrepresentations from an action to merely interpret a contract and declare the rights of the parties.  *See Callan*, 113 F.3d at 163 ("An action to rescind an insurance contract is distinct from an action merely to interpret an insurance contract."); *Home Ins. Co. v. Townsend*, 22 F.3d 91, 92 (5th Cir.1994); *Mega Life and Health Ins. Co. v. Tordion*, 399 F.Supp.2d 1366, 1370 (S.D. Fla. 2005).  Here, Nautilus has invoked federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 and requested rescission of both Insurance Policies, in their entirety, pursuant to N.M.S.A. § 59A-18-11(C).  Under New Mexico law, an insurer generally has the right to rescind an insurance policy obtained as a result of an insured's material misrepresentation in applying for insurance.  *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 504 (10th Cir. 1994).  Accordingly, the essence of Nautilus' claim is that GCRMC misrepresented the type of surgeries being performed on the hospital premises.  *See* Doc. 1, ¶¶ 26-31 (reciting "Grounds for Rescission").   These allegations, along with the nature of the relief requested, distinguish the instant action from a declaratory judgment action.

Finally, Nautilus' claim for rescission stands independent of any request for purely declaratory relief.  That is, Nautilus only requests relief in the form of a cancellation of the contracts in their entirety, along with attorneys' fees and costs.  The case is not therefore "purely, or even primarily, a 'declaratory' action that would be subject to the Declaratory Judgments Act's discretionary jurisdictional provisions."  *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1168 (9th Cir. 1998).  The Court will not therefore apply the discretionary standard of *Brillhart* – a standard which derives from the "[d]istinct features of the Declaratory Judgment Act . . . [which] justify a standard vesting district courts with greater discretion in declaratory judgment actions."  *Wilton*, 515 U.S. at 286.  Instead, the Court determines that *Colorado River*

supplies the proper legal standard for adjudicating Quorum's motion to stay Nautilus' rescission action.

### II. The federal and state actions are not parallel for purposes of Colorado River, thereby requiring this Court to exercise its jurisdiction.

Before examining the *Colorado River* factors, the Court "must first determine whether the state and federal proceedings are parallel." *Fox*, 16 F.3d at 1081, 1082. If they are not, this Court must exercise its jurisdiction. *Allen v. Board of Educ., Unified Sch. Dist.*, 68 F.3d 401, 403 (10th Cir. 1995). If they are parallel, this Court must continue on to determine whether "exceptional circumstances" compel it to surrender jurisdiction. *Id.*

Suits are parallel for purposes of *Colorado River* "if substantially the same parties litigate substantially the same issues in different forums." *Fox*, 16 F.3d at 1081 (quotations omitted). The "exact identity of parties and issues is not required." *Las Cruces*, 289 F.3d at 1182. Rather, proceedings are sufficiently parallel if "the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Id.* (quotations omitted). *Colorado River*'s requirement of "parallel" state court proceedings "implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties' claims." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.4 (9th Cir. 1993). Any doubt regarding the parallel nature of the state suit should be resolved in favor of exercising jurisdiction. *Moses Cone*, 460 U.S. at 28 ("If there is any substantial doubt" as to whether "complete and prompt" protection of the federal rights is available in the state proceeding, dismissal "would be a serious abuse of discretion."); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005); *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 523 (2d Cir. 2001).

In the instant case, Nautilus is not a party in the underlying state tort actions. While it is true that the parties in *Colorado River* were not identical to the parties in the "parallel" state

action, at least the federal plaintiff was a party to the state action. 424 U.S. at 805-06. As mentioned above, Nautilus has not chosen to intervene in any of the underlying state tort actions and seek a rescission of the Insurance Policies. Doc. 19, at 9. Thus, the sole plaintiff in this action is absent from the state court proceedings, strongly suggesting that the cases are not parallel under *Colorado River*. *See Great Am. Ins. Co. v. Goss*, 468 F.3d 199, 208 (4th Cir. 2006); *see also* 32 Am.Jur.2d Federal Courts § 1111 ("[T]he fact that certain parties are before the federal court but not before the state court militates against such a stay.").

In addition to a lack of similar parties, the claims asserted in the two proceedings are markedly different. Nautilus brings a claim for rescission in the instant action, alleging that Quorum misrepresented the nature of the surgeries performed at the hospital in its application for the Insurance Policies. Doc. 1, ¶¶ 26-32. This claim is not present in the underlying state tort actions as they currently stand. Instead, the underlying state tort actions allege negligence and fraud on the part of Dr. Schlicht, Quorum, GCRMC, and the remaining defendants. *See* Doc. 10, Ex. B, ¶¶ 35 - 38 (alleging that all defendants, including Dr. Schlicht, Quorum, and GCRMC, engaged in negligent conduct that fell below the standard of care); 39 (alleging that GCRMC, Quorum, and White Sands were negligent and committed fraud in credentialing Dr. Schlicht, among other things). While Nautilus could intervene in one or more of these actions, it chose not to do so. *King v. Allstate Ins. Co.*, 159 P.3d 261, 264 (N.M. App. 2007). Moreover, there are no claims in the underlying state tort actions alleging that GCRMC made material misrepresentations in its application for the Insurance Policies. This is not therefore a situation where Nautilus' rescission action before this Court is subsumed in the underlying state tort actions. *C.f. Int'l Asset Mgmt., Inc. v. Holt*, 487 F.Supp.2d 1274, 1284 (N.D. Okla. 2007) (finding cases parallel where federal case was "subsumed" in the state case such that if the "[c]ourt stayed the case based on the *Colorado River* doctrine, there would be nothing further for

the federal court to do following conclusion of the State Case"). Put another way, a stay of Nautilus' rescission action will *not* leave this Court with "nothing further to do in resolving any substantive part of the case." *Moses Cone*, 460 U.S. at 28.

Despite the differing claims in the two proceedings, Quorum argues that there is an obvious factual overlap between Nautilus' rescission action and the underlying state tort actions. Doc. 9, at 14. Specifically, Quorum argues that, to prove a right of rescission, Nautilus must establish that complex medical procedures – namely "experimental surgeries" – were being performed on hospital premises when Quorum and GCRMC applied for the Insurance Policies. Doc. 1, ¶ 26. Quorum thus argues that both the federal and state proceedings ask the finder of fact to decide whether the procedures performed by Dr. Schlicht were "experimental."

Despite supporting Quorum's motion to stay the proceedings, GCRMC argues that the "experimental surgeries" issue is not necessarily the same issue in both actions. Doc. 13, ¶¶ 4-5. Nautilus also argues that the state and federal actions do not involve parallel issues. Nautilus explains that because the plaintiffs in the underlying state tort actions can establish negligence and fraud on the part of the defendants without ever establishing that the surgical procedures were experimental, the meaning of experimental is different in the two proceedings. *Id.* at 11.

Here, the state and federal actions appear to contest different issues regarding the nature of the surgeries performed by Dr. Schlicht. In the underlying state tort actions, the plaintiffs equate the term experimental with "negligent," "unsafe," or "unproven." *See, e.g.*, Doc. 19, Ex. 2, ¶¶ 84(k) (alleging that Schlicht's procedures were "unsafe, unproven, and experimental"); 84(hh) (alleging that defendants benefited from "negligent or experimental surgeries being done in their facilities").[6] In contrast, neither "experimental" nor "experimental surgery" is defined in

---

[6] The Gilmore complaint likewise equates "experimental" with "unsafe", "unauthorized", and/or "unproven." *See* Doc. 10, Ex. B, ¶ 39(h).

the application for Insurance Policies. "Experimental" could thus have the same meaning in the application for Insurance Policies as has been given it in the underlying state tort actions. As the Tenth Circuit has noted, however, "experimental" is an ambiguous term when used in an insurance contract. *See, e.g.*, *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1190 (10th Cir. 2007) ("several courts have expressly stated the view that the terms experimental and investigational do not have settled meaning in the insurance-coverage context"). GCRMC suggests that the application for Insurance Policies may turn on a common sense understanding of "experimental surgeries," namely surgeries performed for the purpose of expanding medical knowledge or testing the efficacy of a new procedure. Doc. 13, p. 3. Such a definition for "experimental surgery," if used in Nautilus' rescission action, would likely be distinct from that used in the underlying state proceedings. As a result, the federal proceedings could turn on distinct facts and testimony regarding the nature of Dr. Schlicht's procedures, thereby suggesting that the factual issues in both proceedings are not substantially similar. The Court will construe this doubt regarding the controlling definition of the term "experimental surgery" in the state and federal suits in favor of exercising jurisdiction. *Moses Cone*, 460 U.S. at 28; *TruServ Corp.*, 419 F.3d at 592; *Woodford*, 239 F.3d at 523.

Moreover, while it is possible there will be some factual overlap regarding the nature of Dr. Schlicht's surgeries in the state and federal proceedings, the underlying legal issues are different. In the underlying state tort actions, the legal resolution depends on tort law whereas here the issue is one of contract interpretation. *Exxon Corp. v. St. Paul Fire and Marine Ins.* Co., 129 F.3d 781, 785 (5th Cir. 1997).

Even if the "experimental surgery" issue turns out to be the same factual issue for both the federal and state actions, it is unclear whether the underlying state tort actions will actually litigate this issue. In determining whether federal and state actions are parallel, courts have

12

required "a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *TruServ Corp.*, 419 F.3d at 592. For example, in *Goss*, the Fourth Circuit refused to stay a federal action to rescind an insurance contract pending resolution of a set of state court proceedings. The court explained that "critically, there is no guarantee that the issues litigated in the . . . state court actions will include the facts necessary for [the plaintiff] to prove its claim for rescission and its claim for recovery of certain defense costs." 468 F.3d at 208. Likewise, in this case, there is no guarantee that the underlying state tort actions will resolve the experimental surgery issue. The state plaintiffs could prove up their claims for negligence and fraud based on a number of grounds unrelated to the allegedly experimental nature of Dr. Schlicht's surgeries.[7] Quorum has thus failed to demonstrate a substantial likelihood that the underlying state tort actions will dispose of the experimental surgery issue. S*ee Intel Corp.*, 12 F.3d at 913 ("[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a [*Colorado River*] stay.").[8]

---

[7] As GCRMC correctly notes, the experimental nature of the surgeries is not an element of the causes of action in the underlying state tort actions. *See, e.g.*, Doc. 10, Ex. B, ¶¶34-36; Doc. 19, Ex. 2, ¶¶ 84-87. Thus, the state plaintiffs can prove fraud and negligence based on a number of legal theories. Hererras' complaint in one of the underlying state tort actions alleges that Dr. Schlicht departed from the standard of care in at least eighteen different ways. Doc. 19, Ex. 2, ¶ 83. While four of these alleged departures relate to the experimental nature of the procedures performed by Dr. Schlicht, some of the alleged departures are unrelated to the surgeries. For example, Hererra alleges that Dr. Schlicht departed below the standard of care by improperly creating the perception that he was properly trained and credentialed to perform surgery. *Id.* at ¶ 83(i).

[8] The possibility that the underlying state tort actions will not litigate the "experimental surgeries" issues raises concerns with respect to the appropriate length of a stay, if any, in the instant proceedings. Quorum requests that this Court stay the proceedings until the first underlying state tort action reaches a final judgment. This is based on the assumption that the first underlying state tort action will decide the experimental surgeries issues. GCRMC disagrees with this assumption and thus requests that this Court stay the instant rescission action until all of the underlying state rescission actions have reached a final judgment. Doc. 13, p. 2. This dispute over the necessary length of a stay reinforces the question of whether the underlying

Finally, even if an underlying state tort action resolves the experimental surgery issue, such a resolution will not necessarily provide complete relief to Nautilus. In order for a stay or dismissal to be based on the *Colorado River* doctrine, the state court litigation must be an "adequate vehicle for the complete and prompt resolution of the issue between the parties." *Moses Cone*, 460 U.S. at 28. This is so because, if the *Colorado River* doctrine is invoked, a federal court should "have nothing further to do in resolving any substantive part of the case . . . ." *Id.* The problem here is that the state and federal proceedings raise distinct claims and request different relief. For example, in order to prevail in its rescission action, Nautilus will have to establish that GCRMC made a material misrepresentation in its application when it denied performing "experimental surgery," and that Nautilus reasonably relied on that material misrepresentation. Resolution of whether Dr. Schlicht undertook "experimental" surgeries in the underlying state tort actions will thus not determine all of the elements of Nautilus' rescission claim, and cannot afford Nautilus complete relief. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (ruling that a federal court may enter a stay under the *Colorado River* doctrine only if it has "full confidence" that the parallel state litigation will end the parties' dispute).

Ultimately, because the underlying state tort actions involve different parties, different claims, different remedies, and potentially turn on different legal theories, the Court determines that the instant rescission action is not parallel to the underlying state tort actions for purposes of *Colorado River*. Due to the lack of parallel proceedings, the court must exercise its jurisdiction. *Allen*, 68 F.3d at 403.

---

state actions will decide the "experimental" surgeries issues.

14

Instead of arguing that a stay is appropriate under *Colorado River*,⁹ both Quorum and GCRMC emphasize the prejudice they will be forced to endure if this Court permits the instant rescission action and the underlying state tort actions to proceed simultaneously. Doc. 9, at 11-12; Doc. 22, at 4. Both parties argue that they will be forced to fight a two-front war. GCRMC also argues that it will be forced into the untenable position of having to argue in the rescission action that Dr. Schlicht negligently performed the surgeries on patients. The Court finds neither argument persuasive. Both GCRMC and Quorum are sophisticated parties, capable of fighting a two-front war. *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 2011 WL 1336523, *19 (D. N.M. 2011).

**Conclusion**

For the foregoing reasons, the Court denies Quorums' motion to stay the proceedings.

                                                               *[signature]*

                                                                BRUCE D. BLACK
                                                                UNITED STATES DISTRICT JUDGE

---

⁹ In light of the conclusion on "parallelism," the Court need not apply the *Colorado River* factors to the instant case. Moreover, rather than briefing the *Colorado River* factors and how they would resolve the instant motion to stay the proceedings, Quorum dedicated both its opening and rely brief to the argument that a stay is appropriate under *Brillhart*. As noted, however, *Brillhart* does not govern the instant case. Even if it did, the Court's conclusion would be the same due in large part to the fact that Nautilus' rescission action is not parallel to the underlying state tort actions. *See Las Cruces*, 289 F.3d at 1183 (explaining that the *Mhoon*/*Brillhart* "factors clearly encompass inquiry into the proceedings' similarity. The five factors include '[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue.' These two factors are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings. Without some degree of similarity between the proceedings, a federal declaratory judgment will likely not settle the controversy between the parties, nor would it clarify all the legal relations at issue.") (quoting *Wilton*, 515 U.S. at 286).